IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


| | | |
|---|---|---|
| JEFFREY M. YOUNG-BEY | * | |
|     Plaintiff | | |
|       v. | * | CIVIL ACTION NO. JFM-11-536 |
| A. LOGSTON, et al | * | |
|     Defendants | | |
| | *** | |

MEMORANDUM

Defendants, the State of Maryland, Warden Bobby Shearin, CO II Adam Logsdon, Sergeant James Smith, Case Manager C.M. Campbell, Case Management Supervisor Bethany Cassidy, CO II Melody Fisher, CO II Mark Emerick, CO II Carolyn Price, Chief of Security Keith Arnold, and CO II Michael Snyder, have filed a motion to dismiss, or in the alternative motion for summary judgment. ECF No. 35. Plaintiff has responded. ECF Nos. 49, 51 & 52.[1] Upon review of the papers filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

**Background**

Plaintiff, alleges that on January 22, 2011, defendant Logsdon approached plaintiff and

---

[1] Pending is plaintiff's "amended and second motion for appointment of counsel." ECF No. 48. As plaintiff is aware, a federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1), is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id*. Upon careful consideration of the motions and previous filings by plaintiff, the court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the court are not unduly complicated. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent plaintiff under §1915(e)(1).

Additionally, plaintiff has filed a motion for "leave to allow discovery under F.R.Civ.P. Rule 56(f)." ECF No. 49. The motion seeking discovery shall be denied.

said "I'm going to teach your ass what happens to people who sue Whitare and Salling" (other correctional employees against whom plaintiff had previously filed suit). Another officer came to the area and served plaintiff with an incident report alleging plaintiff had "used threatening language" towards Logsdon. Plaintiff states that on the prior evening, Logsdon had approached him while he was inside his cell, requested his identification and then left the area. A short time later other officers arrived and ordered plaintiff to step out of his cell. Plaintiff states he was handcuffed and taken to a holding cell where he was ordered to submit to a body cavity strip which was recorded on surveillance tape. He claims the search was viewed by female staff. Plaintiff states he was later taken to the special management unit ("SMU") where he was again subjected to a recorded body cavity strip search in view of females. Thereafter, plaintiff states, he was placed in solitary confinement. ECF No. 1.

Plaintiff states that on January 26, 2011, defendant Smith stated that a white inmate in Cell B6 needed to be moved because he and the other inmate in the cell were members of different gangs and could not be housed together. Plaintiff claims that Smith asked him to move into the cell because the gang member was black. Plaintiff explained that he was not a member of any gang and did not want to be put in the situation of housing with a gang member. Smith threatened plaintiff that if he did not cooperate, plaintiff would receive a disciplinary report and be moved by force. Plaintiff moved. Once moved into the cell, plaintiff advised Smith that he could not be housed in B6 and was at a greater risk being housed there than the white inmate had been because plaintiff held no gang affiliations. Smith advised plaintiff he would take care of the situation the next day. *Id*.

Plaintiff states that on January 29, 2011, he was drugged by his cell-mate and sexually assaulted. Plaintiff states that he could not obtain help from prison staff because no staff were on

the tier and the emergency call button inside his cell had been permanently disabled. Plaintiff further states that his written requests as well as his pleas for help in being removed from the cell were ignored. *Id.*

Plaintiff states that similar attacks were attempted against plaintiff over a period of 17 consecutive days. On February 14, 2011, plaintiff indicates he saw Lt. Harbaugh and requested to speak to him. At this time plaintiff filed a formal report and request for criminal prosecution regarding the sexual assault. Harbaugh immediately ordered staff to remove plaintiff from B6, searched the cell, and recovered a razor. Plaintiff was taken to the medical unit and referred to psychology department. *Id*.

Plaintiff states that defendants Shearin, Campbell and Cassidy were notified in writing on January 29, 2011, by plaintiff of the issues regarding his housing status. He further states that Smith was notified of same in writing on February 4, 2011, through correspondence plaintiff gave to officer Murray addressed to Sgt. Smith. *Id*.

Defendants indicate that on January 22, 2011, defendant Logsdon filed a Notice of Inmate Rule Violation against plaintiff for refusing to obey an order and for threatening him. ECF No. 35, Ex. 1. Logsdon reported that during his tier walk he noticed that plaintiff's window was covered in violation of housing unit policy. Plaintiff was directed to uncover his window but refused to do so stating, among other things, "I will take care of your ass when I get out of this fucking cell tonight." *Id*. A hearing was held on the notice of rule violation, Logsdon, plaintiff and other witnesses testified. The inmate witnesses testified that they did not hear plaintiff use profanity or threaten the officer. Rather, they testified that plaintiff informed Logsdon he was using the toilet and asked for Logsdon's name. After the hearing, plaintiff was found guilty of the infraction and the hearing officer recommended plaintiff received 150 days of

segregation.  Plaintiff appealed the decision to the Warden but the Warden upheld the decision of the hearing officer.  *Id*.  Logsdon avers that he has never threatened, provoked or harassed plaintiff.  Logsdon avers that he has no knowledge of plaintiff being strip searched in front of female officers.  *Id*., Ex. 2.

On January 26, 2011, plaintiff was transferred to another cell.  Defendant Smith avers that he spoke with plaintiff regarding the possible cell change and that plaintiff made no complaints or protests regarding the transfer.  *Id*., Ex. 3.

On February 14, 2011, plaintiff advised Lt. Harbaugh that he had been sexually assaulted by his cell mate on January 29, 2011.[2]  *Id*., Ex. 4.  Plaintiff's allegations of assault were addressed immediately once correctional staff became aware of them. The cell was searched; however, no significant contraband was found.  *Id.*  Once he advised of the assault, plaintiff was immediately escorted to the medical department for examination, the Internal Investigation Unit ("IIU") was notified, and plaintiff was moved to a new cell.  *Id*., Ex. 5, Exs. 7-11.

The IIU investigation uncovered no evidence to support plaintiff's allegation of sexual assault.  Spencer, the cell mate, denied the accusation and opined that plaintiff was making up the story to get out of the institution.  *Id*., Ex. 4.  Plaintiff reported to the IIU officer that Spencer had put Spencer's medication into plaintiff's food which impaired his cognition.  He further stated that Spencer began the attack while plaintiff was asleep and he woke as Spencer assaulted him.  Plaintiff stated that Spencer also held a shank to his neck during the assault.  He stated that he advised Case Manager Campbell and the Warden that Spencer regularly masturbated.  He also stated that the cell intercom did not work and staff did not stay on their tier.  *Id*., Ex. 5.  The IIU investigator learned that when plaintiff was seen by a mental health counselor on February 2,

---

[2] Plaintiff advised Harbaugh that "he did not witness [the assault] but that he thinks he was drugged and when he came to his rectal area was sore and he had been penis penetrated." ECF No. 4, p. 1.

2011, he spoke only about his notice of infraction and did not mention the assault. Further, the medical evaluation produced no evidence in support of plaintiff's allegation. The IIU investigation also determined that Spencer had no known gang affiliations, nor was he prescribed any medication that would cause impairment as plaintiff alleged. *Id.*

On March 3, 2011, plaintiff was moved to NBCI Housing Unit #1, Cell A34B where he is housed alone. Spencer's name has been placed on plaintiff's enemy list. *Id.* Harbaugh avers that neither he, nor to the best of his information, any other correctional staff were aware of any problems between plaintiff and his cell mate prior to February 14, 2011. Harbaugh avers that when he spoke to plaintiff on February 14, 2011, about the assault, plaintiff advised him that he had not told anyone about the assault prior to February 14, 2011, because he wanted to speak to Harbaugh in person. *Id.*, Ex. 5.

**Standard of Review**

A.      Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to

actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.      Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

A.      Sovereign Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *Penhurst State School and Hospital v. Halderman*, 465 U. S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. State Gov't Code Ann., § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. For this reason the motion to dismiss made on behalf of the State of Maryland must be granted.

B.     Respondeat Superior

Plaintiff's complaint against Warden Bobby Shearin, Case Manager C.M. Campbell, Case Management Supervisor Bethany Cassidy, and Chief of Security Keith Arnold is based solely upon the doctrine of respondeat *superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates'' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury

suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

In the context of a failure to protect claim a plaintiff must prove not only that "prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Id.* at 373, citing *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980). A supervisor's "continued inaction in the face of documented widespread abuses," might prove such a state of mind. *Id.* "The proper question is whether [a supervisor] acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." *Moore v. Winebrenner*, 927 F.2d 1312, 1315 (4th Cir. 1991). If these requirements are not met, a supervisor is not directly liable.

There is no evidence that Shearin, Campbell, Cassidy, or Arnold knew of any threat to plaintiff. Plaintiff points to the attack upon him, the attacker's possession of a homemade weapon, and the attacker having been involved in prior altercations with other inmates, in an attempt to demonstrate a pattern of indifference. Plaintiff cannot satisfy the burden under *Slakan* "by pointing to a single incident or isolated incidents," as he does here. *Id*. at 373. Unfortunately, it is impossible to provide a violence free climate in prison. Incidents of assault occur within the confines of such volatile settings. The plaintiff has failed to establish that there was information such as to place a reasonable person on notice that he would be assaulted or that extra security precautions were necessary to safeguard his well-being. Moreover, plaintiff's complaints are not illustrative of a dangerous prison environment which would place the defendants on notice of a pervasive and serious risk of harm to plaintiff or place a reasonable person on notice that extra security precautions were necessary to safeguard the well-being of plaintiff. Plaintiff has pointed to no action or inaction on the part of Shearin, Campbell, Cassidy,

and Keith Arnold that resulted in a constitutional injury, and accordingly, his claims against them shall be dismissed.[3]

C.  Retaliation/Harassment

Plaintiff claims that defendants "retaliated against him because plaintiff filed a lawsuit against the defendants' coworkers and friends." ECF No. 49. Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). Plaintiff offers nothing in support of his claim other than self-serving conclusory averments. There is nothing in the record to suggest that defendants acted in the manner alleged. Moreover, the testimony of plaintiff's witnesses at the adjustment hearing resulting from the allegedly retaliatory actions makes no reference to Officer Logsdon threatening plaintiff with reprisal for filing lawsuits. Rather, plaintiff's own witnesses testified that Logsdon instructed plaintiff to remove the unauthorized window covering from his cell door. None of the witnesses are reported to have testified that Logsdon threatened plaintiff. The hearing officer found that plaintiff was directed to remove the unauthorized window covering and refused to do so. "In the prison context, we treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3de 1310, 1317 (4th Cir. 1996). There is nothing in the record to suggest that defendants acted

---

[3] Plaintiff's complaint against CO II Melody Fisher, CO II Mark Emerick, CO II Carolyn Price and CO II Michael Snyder shall be dismissed without prejudice. Plaintiff has failed to list any actions or inactions on the part of these defendants that caused him constitutional injury.

in the manner alleged.

Moreover, "not all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim. *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff laughed at inmate and threatened to hang him); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980) (no harm alleged from claimed verbal harassment and abuse by police officer). Accordingly, plaintiff's allegation that defendants used threatening language toward him fails to state a claim.

D.  Failure to Protect

Plaintiff alleges that all defendants were deliberately indifferent in failing to provide adequate supervision and security to protect him and as such his right to be free from cruel and unusual punishment has been violated. The Eighth Amendment does recognize this right. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

As noted by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994).

> Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Id*. at 833 (internal quotations and citations omitted). In a failure to protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference. *Id*. at 834.

The evidence before the court does not demonstrate that plaintiff can meet the first prong

of a failure to protect claim as there is no evidence of an assault. Assuming, without deciding, that plaintiff can satisfy the objective element, the second element is even more problematic. Deliberate indifference in the context of a failure to protect claim means that the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U. S. at 837. Unless a prison official actually makes this inference, he does not act with deliberate indifference even where his actions violate prison regulations or can be described as stupid or lazy. *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

In his complaint, plaintiff indicates that defendants Campbell and Cassidy, as case managers, were responsible for "policies, practices and customs concerning prisoner housing decision and classifications." ECF No. 1. He further indicates that defendant Smith advised plaintiff that he needed to be moved into a cell with Spencer because Spencer and another inmate were members of different gangs and could not be housed together. Plaintiff states that he advised Smith that he did not want to be housed with Spencer but was threatened with a disciplinary infraction if he did not lock in. *Id*.

There is simply no evidence that any of the named defendants were deliberately indifferent to plaintiff's safety. As soon as plaintiff notified Harbaugh of the attack he was moved from his cell, taken to medical, referred to the psychology department, and an investigation undertaken. Even if plaintiff noted his objection to being housed with Spencer to Smith as he claims there is nothing in the record that would support a finding that the named defendants were aware of a risk of harm to plaintiff and disregarded it. Plaintiff and Spencer were not known enemies. They were not members of rival gangs. They had no apparent dispute.

As such, even if plaintiff stated a subjective belief that he could not be housed with Spencer, there was nothing to support that contention and no evidence that any of the named defendants believed housing Spencer and plaintiff together posed a risk of harm to plaintiff. There is simply nothing to support plaintiff's claim that defendants deliberately disregarded his safety.

E.  Injunctive Relief

As a preliminary injunction temporarily affords an extraordinary remedy prior to trial than the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011). Plaintiff's request for injunctive relief shall be denied, as he does not clearly establish that he would suffer immediate and irreparable injury, loss, or damage if the requested relief is not granted.[4] In short, the conditions set out by plaintiff do not warrant immediate emergency relief.

F.  Strip Search

Logsdon avers he has no knowledge of plaintiff being subjected to strip searches. Plaintiff's complaint as filed and amended fails to name officers who were involved in the strip searches. Accordingly, plaintiff's claim as to improper strip searches shall be dismissed without prejudice.

## Conclusion

Plaintiff's motion for discovery contained in ECF No. 49 is denied. Plaintiff's motion for

---

[4] Inasmuch as plaintiff has a forum for his complaint, equitable remedies, such as temporary restraining orders, shall not be given.

appointment of counsel is denied.  Defendants' motion to dismiss or in the alternative for summary judgment shall be granted in part and denied in part**.**  Plaintiff's complaint against CO II Melody Fisher, CO II Mark Emerick, CO II Carolyn Price and CO II Michael Snyder shall be dismissed without prejudice.  Plaintiff's complaint regarding improper strip searches shall be dismissed without prejudice.  Plaintiff's complaint is dismissed with prejudice in all other respects.  A separate order follows.


____June 22, 2012_____                    ____/s/_____
Date                                                           J. Frederick Motz
                                                                    United States District Judge